UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Criminal Action No.: 13- 0150 (RC) |
| v. : | |
| : | Re Document Nos.: 28, 30, 32 |
| KEVIN MACK, : | |
| : | |
| Defendant. : | |

# MEMORANDUM OPINION

### DENYING DEFENDANT MACK'S MOTIONS TO DISMISS THE INDICTMENT

## I. INTRODUCTION

Defendant Kevin Mack was indicted on May 23, 2013, on one count of unlawful distribution of a mixture or substance of phencyclidine, also known as PCP, a Schedule II controlled substance, and one count of unlawful distribution of one hundred grams or more of a mixture or substance of PCP. On June 12, 2014, this Court denied the Defendant's motion for bond. Since then, the Defendant has filed three motions, two of which were *pro se*, seeking dismissal of the indictment on various grounds. Following the Government's omnibus response in opposition to all of the Defendant's arguments, and argument on those motions held on July 10, 2014, the Defendant's motions are now ripe for resolution. For the reasons set out below, the Court will deny each of the motions for dismissal.

## II. FACTUAL BACKGROUND

In 2012, law enforcement contacted a man named "Rico" with the hopes that Rico would introduce undercover officers to his PCP supplier. Following a purchase of PCP made directly from Rico on June 22, 2012, Rico provided the officer with information about his "uncle," a man

named "Jimmy," whom Rico claimed was his PCP supplier.[1] After obtaining Jimmy's name and phone number, the Government attempted, unsuccessfully, to contact Jimmy multiple times to arrange purchases of PCP. Instead, it was the Defendant, rather than Jimmy, who responded to the Government's overtures.[2] After initial contact was made on July 19, 2012, the Defendant and the undercover officers arranged for the sale and purchase of four ounces of PCP on July 23, 2012. Unbeknownst to the Defendant, however, the transaction was recorded on video, clearly displaying the exchange of PCP and $1,200 cash between the Defendant and the undercover officers. The drugs subsequently were tested and confirmed to contain PCP.

At the end of July, the undercover officers and the Defendant exchanged a series of text messages attempting to set up another purchase of PCP. After a second buy was scheduled and then aborted due to the Defendant not having the PCP available, another buy was set for September 5, 2012. As with the first purchase, the second meeting occurred in the vehicle of the undercover officers and was video-recorded. At the second transaction, the Defendant agreed to sell six ounces of PCP for $1,800. Following the purchase, the drugs were tested and confirmed to contain more than 100 grams of a mixture or substance containing PCP.

Due to the lead investigator's involvement in another investigation, for the next few months law enforcement debated whether to continue the investigation against the Defendant and the other persons involved. A decision was eventually made to cease the investigation. On May 23, 2013, the grand jury returned an indictment charging the Defendant with one count of

---

[1] The Government disputes the Defendant's contention that Jimmy and Rico were government cooperators. While the Government recognizes that Jimmy has cooperated on previous occasions, the Government submits that Jimmy's cooperation was terminated in 2011, and that neither Jimmy nor Rico were acting as cooperators at any time during the year 2012.

[2] The Government does not know why it was the Defendant, not Jimmy, who reached out to the undercover officers. Nor has the Defendant provided any reason for having done so. At the motions hearing, the Defendant suggested that it was Jimmy, rather than the Defendant, who may have sent the text messages. No evidence has been presented to support that theory.

unlawful distribution of a mixture or substance containing PCP and one count of unlawful distribution of one hundred grams or more of a mixture or substance containing PCP. On June 12, 2013, the Defendant was arrested.

### III.  ANALYSIS

**A.  Motion to Amend Additional Laws and Argument to Support Trial Counsel's Pending Bond Motion**

The Court previously denied the Defendant's motion for bond. *See* Op. & Order, ECF No. 33. Nevertheless, the Court will clarify one issue raised by the Defendant in a motion he filed *pro se* in support of the motion for bond. In his motion, the Defendant alleged that the Bail Reform Act, 18 U.S.C. § 3142, was unconstitutional and violated the Fifth and Eighth Amendments because it provides judges with the "power and legal authority to impose[ ] a 'punishment' on a pretrial detainee 'before conviction,' . . . without fair due process of law." *See* Def.'s Mot. to Am., ECF No. 27. The United States Supreme Court, however, has affirmatively rejected Fifth and Eighth Amendment challenges to the Bail Reform Act. In *United States v. Salerno*, 481 U.S. 738 (1987), the Supreme Court held that the extensive procedural safeguards provided by the Bail Reform Act and its compelling regulatory purpose — to protect the safety of individuals and the community from crimes committed by persons charged with serious felonies while on release — were sufficient to withstand facial challenges to its constitutionality. *Id*. at 755. The Supreme Court's holding is dispositive, and fatal, to the Defendant's argument. Moreover, in the opinion denying the Defendant's motion for bond, this Court provided the Defendant with the necessary procedural safeguards and found that the Defendant indeed posed a

threat of danger to the community if released. *See* Op. & Order, ECF No. 33.[3] The Court next turns to the Defendant's substantive arguments for dismissal of the indictment.

### B. Motion to Dismiss Indictment for Lack of Subject Mater Jurisdiction

In his first *pro se* motion to dismiss, the Defendant makes three principal arguments: (1) the evidence gathered to arrest and indict him was a result of an unconstitutional use of cell phone recordings, wiretaps, and confidential informants; (2) the statements seized from the Defendant during the recordings of the cell phone calls, wiretaps, and conversations with undercover police officers were a violation of his Fifth Amendment right against self-incrimination; and (3) the system of indictment by a grand jury is unconstitutional.[4]

Regarding the Defendant's first argument, the Government asserts that no cell phones were searched, and neither wiretaps nor informants were utilized to obtain incriminating evidence about the Defendant. *See* Govt.'s Opp. Mot. at 4, ECF No. 34. The Defendant has not provided any support for his allegations that such methods were used, and there is no indication in the record that the Government in fact employed these means. Instead, the facts show that the Defendant initiated the sales of narcotics to undercover officers via text messages, and the subsequent sales were recorded using hidden cameras in the vehicle of the officers.

The voluntary exchange of text messages and the use of hidden cameras in the undercover officers' vehicle, however, are not searches or seizures subject to Fourth Amendment

---

[3] The Defendant made various other arguments for dismissal of the indictment in his *pro se* motion filed in support of his counsel's bond motion. Those arguments have been reiterated in subsequent motions. The Court therefore will address these arguments when ruling on the Defendant's other motions.

[4] The Defendant also alleges that "[t]he collection of the Government's evidence to be induce [sic] at a future trial, will 'trespass' on the defendant's 5th and 6th Amendment rights to a 'fair and impartial trial,' the criminal complaint 'shall' be dismiss [sic], for having 'tainted' informations [sic] in it, as well as police officers 'sworn affidavit' reports." ECF No. 28. The Court cannot discern a cognizable defense from these statements; consequently, this claim will not be addressed further.

4

protection. The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. *United States v. Maple*, 348 F.3d 260, 261 (D.C. Cir. 2003) (citing *Soldal v. Cook County*, 506 U.S. 56, 63 (1992)). The Defendant did not have a legitimate expectation of privacy in the messages he willingly, and without undue Government prompting, sent to the undercover officers. In regards to the use of the cameras, the Supreme Court has firmly rejected constitutional challenges to instances "when [electronic] devices have been used to enable government agents to overhear conversations…. It has been insisted only that the electronic device not be planted by an unlawful physical invasion of a constitutionally protected area." *Lopez v. United States*, 373 U.S. 427, 438-39 (1963). Here, the hidden cameras were planted in the undercover officers' vehicle, not on the Defendant's person or property. *See United States v. Savoy*, 889 F. Supp. 2d 78, 87 (D.D.C. 2012) (citing *Rakas et al. v Illinois*, 439 U.S. 128 (1978) (holding that petitioners were not entitled to challenge the search of an automobile in which they were passengers because they "asserted neither a property nor a possessory interest in the automobile")). The Government, therefore, used no means that violated the Defendant's Fourth Amendment rights.[5]

In his second argument, the Defendant alleges that the statements he made to undercover officers were subject to the Fifth Amendment's protection against self-incrimination as recognized in *Miranda v. Arizona*, 384 U.S. 436 (1966). The Fifth Amendment privilege against

---

[5] The Defendant also argues that evidence was acquired as part of a "fishing expedition" by the Government, citing *Washington v. United States*, 585 A.2d 167 (D.C. 1991), to support his claim. That case, however, stands for the proposition that a warrantless search unsupported by probable cause cannot be justified by the subsequent discovery of incriminating evidence found as a result of the initial search. *Id*. at 170. The scenario present in *Washington* simply does not arise in this case.

self-incrimination applies to custodial interrogation by law enforcement; that is, *Miranda* applies when a defendant is in "custody" and makes a statement in response to government "interrogation." *Id.* at 467-68. For purposes of *Miranda*, however, "custody" is not limited to formal arrests but also includes restraints on freedom of movement that are the functional equivalent of a formal arrest. *See California v. Beheler*, 463 U.S. 1121, 1125 (1983). The Supreme Court has phrased the *Miranda* inquiry as whether a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

In this case, the Defendant freely made statements to the undercover officers in furtherance of the commission of the crimes, not as a result of interrogation. The Defendant was not in custody at the time he communicated with the undercover officers and was completely free to cease communicating with them or to leave during the alleged drug transactions. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990). Accordingly, *Miranda* does not apply, and the Defendant's statements were not acquired in violation of the Fifth Amendment.

The Defendant's third argument alleges that the system of indictment by grand jury is unconstitutional. The grand jury and its role in our system are constitutional guarantees enshrined in the Fifth Amendment, which states, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury[.]" U.S. Const. amend. V. Federal Rule of Criminal Procedure 6 delineates the rules surrounding the summoning of a grand jury and the ways to challenge its selection. *See* Fed. R. Crim. P. 6. None of the potential challenges provided by Rule 6 are present in this case, and the Defendant has not

alleged any in his motion. Instead, the Defendant raises a number of novel contentions to support his argument: that the grand jury system violates the separation of powers; that grand jurors must be active members of the D.C. bar; that grand jurors usurp the authority of judges; and that Rule 6 infringes on the president's appointment power. *See* Def.'s Mot. Dism. at 5-6, ECF No. 28. The Defendant provides no support for any of these propositions. The Court has considered each of the arguments and rejects them all as meritless.

### C. Motion to Amend and Supplement Additional Facts and Exhibits to Support Pending Motion to Dismiss Indictment

In this second *pro se* motion, the Defendant raises entrapment and selective prosecution as bases for dismissal.[6] *See* Def.'s Mot. Dism., ECF No. 30. The entrapment defense protects an "otherwise law-abiding citizen who, if left to his own devices, likely would have never run afoul of the law." *United States v. Law*, 528 F.3d 888, 905 (D.C. Cir. 2008). This defense "has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *United States v. Glover*, 153 F.3d 749, 754 (D.C. Cir. 1998). If the defendant meets the initial burden of proving government inducement, the government can rebut by demonstrating he was predisposed to commit the crime. *Law*, 528 F.3d at 905. "However, a defendant only is entitled to an entrapment instruction when[ ] there is sufficient evidence from which a reasonable jury could find entrapment." *United States v. McKinley*, 70 F.3d 1307, 1309 (D.C. Cir. 1995) (internal quotations and citations omitted).

As an initial matter, the Defendant and the Government dispute whether informants were used. The Defendant has submitted no evidence whatsoever to rebut the Government's assertion

---

[6] The Defendant also brings a claim challenging the "standing" of the United States to pursue this case. The concept of standing, however, is inapposite in this context, while the jurisdiction of the United States to enforce violations of its criminal laws in this Court is unquestionable.

that neither Jimmy nor Rico acted as government cooperators at the time of the drug transactions at issue here. But even if the Court were to take the Defendant's allegation as true — that Jimmy and/or Rico were government informants — the Defendant's entrapment defense, absent any additional evidence presented at trial, still fails. Government inducement involves "persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship." *United States v. Sanchez*, 88 F.3d 1243, 1249 (D.C. Cir. 1996) (citation and internal quotation omitted). Even "repeated government solicitations do not establish inducement unless the requests are coupled with persuasive overtures, or unless there is evidence of reluctance on the defendant's part demonstrating that the repetition of the requests may have moved an otherwise unwilling person to commit a criminal act." *United States v. Hanson*, 339 F.3d 983, 989 (D.C. Cir. 2003). Finally, "[a]n informant's selling or giving drugs to the subject of an investigation, without more, falls well short of the type of behavior that would amount to an inducement[.]" *United States v. Trejo*, 136 F.3d 826, 828 (D.C. Cir. 1998).

In this case, there is no indication that either Rico or Jimmy — even if they were government informants — engaged in persuasive overtures beyond those ordinarily present in drug transactions. *See Glover*, 153 F.3d at 754-55. Similarly, the Government did not solicit the Defendant directly; the objects of the Government's original solicitations were Rico and Jimmy. Based on the evidence in the record thus far, the first sale of PCP was initiated by the Defendant, who contacted the undercover officers out of his own volition and for reasons unbeknownst to the Government. Even the second drug sale, which resulted from a series of text messages between the undercover officers and the Defendant, does not amount to inducement as there is no evidence that the Government's requests were accompanied by persuasive overtures or that the Defendant displayed any reluctance in consummating the transaction. *See McKinley*, 70 F.3d at

8

1313. The Defendant has not provided the factual predicate or evidentiary foundation necessary to meet his initial burden of showing government inducement. Accordingly, his argument for dismissal based on entrapment fails.

The Defendant next alleges that the Government engaged in selective prosecution when it chose to prosecute him while declining to prosecute Rico or Jimmy. To prevail on a defense of selective prosecution, a defendant must prove both that he was singled out for prosecution among others similarly situated and that the decision to prosecute was motivated by a discriminatory purpose. *United States v. Armstrong*, 517 U.S. 456, 465 (1996). To show discriminatory motivation, a defendant must establish that the selection to prosecute was "based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* at 464. The Supreme Court has noted that "the standard is a demanding one." *Id.* at 463. In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute . . . generally rests entirely in his discretion." *Id.* at 464. As a result, "[t]he presumption of regularity supports" their prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id*.

The Defendant has not come close to meeting this rigorous test. First, the Government had probable cause to believe the Defendant sold drugs. Second, the Defendant has not put forth a shred of evidence even hinting at the existence of a discriminatory purpose behind the decision to prosecute him but not Rico or Jimmy. And, during the motions hearing, the Defendant's counsel complained that the decision to prosecute the Defendant was arbitrary and unfair, yet he admitted that he had no basis to believe that the Government acted with any improper purpose as recognized by the law. In fact, the Defendant's counsel conceded that all of the purportedly

9

similarly-situated comparators are of the same gender and race as the Defendant. Because the Defendant has not presented the requisite evidence needed to dispel the presumption that the prosecutor acted within her broad discretion, the Court must reject the Defendant's argument for dismissal based on selective prosecution.

### D. Omnibus Motion to Dismiss Indictment; To Compel Discovery; For a Severance of Counts; and For a Bill of Particulars

In his third motion to dismiss, the Defendant, through his counsel, asserts that his right to a speedy trial was violated due to pre-indictment delay, moves to compel discovery and sever the counts, and requests a bill of particulars. *See generally* Def.'s Omn. Mot. Dism., ECF No. 32. Regarding the first claim, the Defendant argues that the pre-indictment delay of more than eighth months after the date of the first alleged offense violated his right to a speedy trial. Any argument regarding pre-indictment delay must be based on the due process clause of the Fifth Amendment, "and to establish such a due process violation, a defendant must establish that the delay resulted in 'actual prejudice to the conduct of the defense' and that the government 'intentionally delayed to gain some tactical advantage' over the defendant." *United States v. Brodie*, 326 F. Supp. 2d 83, 87 (D.D.C. 2004) (citing *United States v. Marion*, 404 U.S. 307, 325 (1971)).[7] The Defendant has not satisfied his burden under this standard.

The Defendant states that the pre-indictment delay "resulted from government negligence or gross indifference to Mr. Mack's rights." Def.'s Mot. Dism. at 3, ECF No. 32. The Defendant, however, has offered no facts to support this claim. Similarly, the Defendant has neither made a claim of actual prejudice suffered, nor presented evidence that the Government intentionally

---

[7] A defendant has no Sixth Amendment claim based on alleged pre-indictment delay. *See United States v. Marion*, 404 U.S. 307, 320 (1971) ("[E]ither a formal indictment or else the actual restraints imposed by arrest and holding to answer a criminal charge [ ] engage the particular protections of the speedy trial provisions of the Sixth Amendment.").

delayed its investigation or the seeking of a grand jury indictment in order to gain a tactical advantage or to harass the Defendant. *See Brodie*, 326 F. Supp. 2d at 87-88. In any case, the delay, which the Government avers was the result of its attempt to decide whether to further investigate the Defendant and his associates, *see* Govt.'s Opp. Mot. at 8, was not significant. The Defendant therefore has not shown that his rights were violated by any pre-indictment delay.

The Defendant also seeks an order from this Court compelling discovery, "notwithstanding the timely disclosure of ample materials by the government." Def.'s Mot. to Dism. at 3, ECF No. 32. The Government submits that it has complied with the Defendant's discovery requests. *See* Govt.'s Opp. Mot. at 9. The Defendant's inadequate briefing of this point does not allow the Court to determine whether the Government has failed to provide any discovery to which the Defendant is entitled.[8]

Next, although the motion includes a claim "for a severance of counts" in its title, the Defendant fails to raise any arguments in furtherance of this claim in his motion. Arguments presented at the motions hearing added little to the briefing. Nevertheless, Federal Rule of Criminal Procedure 8 allows for the joinder of offenses if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Rule 8 generally is construed liberally in favor of joinder. *United States v. Richardson*, 161 F.3d 728, 733 (D.C. Cir. 1998). "As long as only one defendant is concerned, Rule 8(a) permits joinder of such offenses, even if they are entirely unrelated to each other." *United States v. Gooch*, 665 F.3d 1318, 1325 (D.C. Cir. 2012). The Defendant is charged with two counts, both of which concern the unlawful

---

[8] At the motions hearing, the Defendant raised an objection concerning redactions made in some of the investigation materials produced. The Court will deal with this issue through a separate order.

11

distribution of the same drug, PCP. Given that the two transactions involved the same undercover officers and were of similar character, the offenses charged constitute instances of a common scheme of drug distribution by the Defendant. As such, joinder is permissible.

After counts are joined, Federal Rule of Criminal Procedure 14 controls the subsequent severance of counts. *United States v. Carson*, 455 F.3d 336, 372 (D.C. Cir. 2006). Rule 14 states that if "joinder . . . appears to prejudice a defendant . . . the court may order separate trials of counts . . . or provide any further relief that justice requires." Fed. R. Crim. P. 14(a). The Defendant carries the burden of demonstrating prejudice resulting from a failure to sever. *See Carson*, 455 F.3d at 374. If such a showing is made, it remains in the district court's discretion whether to sever the counts. *See Gooch*, 665 F.3d at 1326. As the Court previously mentioned, the Defendant has not made any showing that the failure to sever the counts would cause prejudice. In the absence of any demonstration of prejudice, the Court does not find that there exists a serious risk that failure to sever the counts would prevent the jury from making a reliable judgment about guilt or innocence. *See id.* at 1336. Severance therefore is inappropriate.

Lastly, the Defendant seeks an order requiring the Government to provide a bill of particulars setting forth the "specific event(s) [time(s), place(s) etc.] for which the government anticipates to proffer evidence to suggest that the defendant engaged in illegal activity, and the nature of such activity, related to the 'pending investigation' . . . ." Def.'s Mot. Dism. at 6, ECF No. 32. Under Federal Rule of Criminal Procedure 7, a court "may direct the filing of a bill of particulars." Fed. R. Crim. P. 7(f). "A bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987). "It is not the

function of a bill of particulars [however,] to provide detailed disclosure of the government's evidence in advance of trial." *United States v. Edelin*, 128 F. Supp. 2d 23, 37 (D.D.C. 2001). When the indictment is sufficiently detailed, or the requested information is available in some other form, a bill of particulars is not required. *Id*.

As is clear from a review of the indictment, the information afforded in the Government's reply motion, and the discovery provided thus far, the charges against the Defendant are detailed and have been alleged with sufficient particularity.[9] "There is thus no reason for any further particularization of the overt acts, the circumstances surrounding the alleged acts or any other evidentiary details." *Brodie*, 326 F. Supp. 2d at 92. As such, the Defendant's request for a bill of particulars is denied.

### IV. CONCLUSION

For the foregoing reasons, the Court denies the Defendant's motions to dismiss the indictment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 11, 2014                                   RUDOLPH CONTRERAS
                                                       United States District Judge

---

[9] At the motions hearing, the Defendant, for the first time, requested more detail about the Government's forfeiture claim. The Government agreed to provide a separate pleading regarding the exact amount it intends to seek. As such, the Court need not address the issue further at this time.

13